UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JUAN SANDRO CABRERA,

        Petitioner,                  Case No. 1:24-cv-229

v.                                      Honorable Paul L. Maloney

NATHAN HOFFMAN,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. This matter is presently before the Court on Respondent's motion to dismiss the § 2254 petition on the basis that the state court's judgment was not final at the time Petitioner initiated these proceedings. (ECF No. 7.) For the reasons set forth below, the Court will grant Respondent's motion and dismiss Petitioner's § 2254 petition without prejudice.

**I.    Factual Background**

Petitioner Juan Sandro Cabrera is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On August 30, 2019, following a jury trial in the Ottawa County Circuit Court, Petitioner was convicted of one count of first-degree murder, in violation of Mich. Comp. Laws § 750.316(a), one count of committing a felony that was motivated by membership or association with a gang (gang-motivated felony), in violation of Mich. Comp. Laws § 750.411u, and one count of carrying or possessing a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On January 6, 2020, the trial court sentenced Petitioner to life

imprisonment for the murder conviction, as well as 2 years for felony-firearm and a minimum of 7 years, 11 months, to a maximum of 20 years for gang-motivated felony.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> [Petitioner] was convicted after testimony and evidence demonstrated that he shot and killed the victim, Troy Wells, Jr., at the Hampton Inn Hotel ("Hampton") in Holland Township, Michigan, just after midnight on February 16, 2019. Evidence at trial suggested [Petitioner] was a member of a gang—the Holland branch of the Latin Kings—and he may have shot Wells under the belief that Wells was a member of a rival gang, the Gangster Disciples.
>
> On the night of the shooting, [Petitioner] went to Room 230 at the Hampton with his friends, JDP[1] and Jose Luis Garcia, III. The group went to the hotel to celebrate Garcia's birthday and brought two semi-automatic rifles with them—an AR-15 rifle and a POF-USA P-15 multicaliber rifle—and about 100 rounds of ammunition. Also present with the three during some portions of the evening were Megyn Hanrahan and Skylar Hittle.
>
> Just before midnight, Wells and his sister, Jakara Hunter, arrived at the Hampton to visit another gathering at the hotel. When Wells and Hunter arrived, Wells did not immediately go into the party with Hunter. Instead, he walked down the hallway past Room 230 around the same time Hittle and JDP were leaving the room. Although JDP and Hittle did not at first notice Wells, JDP turned toward Wells and then walked up to him in the hallway just outside Room 230. Wells and JDP argued briefly and, when the door to Room 230 opened, JDP stated, "Look at this G f--k n---r," and pointed at Wells. [Petitioner] subsequently stepped into the doorway, took aim at Wells with the AR-15, and fired at least 10 shots.[2] [Petitioner], Garcia, JDP, Hittle, and Hanrahan fled the hotel within minutes of the shooting, leaving behind the rifles and abandoning other evidence in a trash can.
>
> At trial, Hanrahan, Garcia, and JDP identified [Petitioner] as the shooter. [Petitioner's] attorney avoided discussing the video evidence or the testimony by the witnesses who were in the hallway; instead, [Petitioner's] defense centered on the assertion that Hanrahan, Garcia, and JDP were lying when they identified [Petitioner] as the shooter. The jury rejected that defense and convicted [Petitioner] as described.

---

[1] JDP's initials will be used because he was a minor at the time of the incident.

[2] The hotel had numerous video cameras that captured the events of that night. Detective Michael Tamminga obtained the video evidence and testified at trial. He

> prepared still images from the videos and identified the various persons who appeared in the videos and pointed out to the jury specific clothing that the persons depicted were wearing. Only one camera captured the events in the hallway outside Room 230. That camera captured the confrontation between Wells and Palomares, and recorded the shooting. However, because the shooter did not step fully into the hallway, the video only shows the shooter's left arm and left leg with the rifle protruding from the entryway to Room 230. The video shows that the shooter wore a long-sleeved, black shirt and black pants, and had on black shoes with reflective material. The only occupant of Room 230 wearing such clothing was [Petitioner].

*People v. Cabrera*, No. 352319, 2022 WL 729280, at *1–2 (Mich. Ct. App. Mar. 10, 2022).

Petitioner moved for a new trial, and the trial court conducted an evidentiary hearing regarding Petitioner's counsel's representation and to consider a crime scene reconstruction video that Petitioner's appellate counsel had prepared. *Id.* at *2. The trial court denied the motion. *Id.*

Petitioner subsequently appealed, raising numerous claims of error. *See id.* On March 10, 2022, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *Id.* at *1. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court. On March 6, 2023, the supreme court, in lieu of granting leave to appeal, vacated Petitioner's judgment of sentence and remanded the matter to the trial court for resentencing in light of *People v. Parks*, 987 N.W.2d 161 (Mich. 2022). *People v. Cabrera*, 980 N.W.2d 721 (Mich. 2022). In doing so, the supreme court stated: "[Petitioner's] mandatory sentence of life without parole for first-degree murder, committed when he was 18 years old, is cruel or unusual punishment in violation of Const. 1963, art. 1, § 16." *Id.* The supreme court denied leave to appeal in all other respects, noting that it was "not persuaded that the questions presented should be reviewed by this Court." *Id.*

On March 6, 2024, Petitioner, through counsel, filed his federal habeas petition, raising the following ground for relief:

> I. Petitioner's Sixth Amendment rights were violated when trial counsel rendered ineffective assistance by: (a) not investigating video evidence; (b) failing to object to testimony by a detective and a gang expert; (c) failing to seek an instruction regarding premeditation; (d) failing to object when the prosecutor introduced autopsy photographs; and (e) cumulative error.

3

(Brief Supp. § 2254 Pet., ECF No. 2-1, PageID.12–13.) By order (ECF No. 5) entered on March 13, 2024, the Court directed Respondent to file an answer to the petition.

Respondent filed the present motion to dismiss and state court record (ECF Nos. 7 and 8) on September 9, 2024. Respondent asserts that Petitioner's habeas petition should be dismissed because his sentence was not final at the time Petitioner filed his petition, thereby depriving this Court of subject matter jurisdiction. (ECF No. 7, PageID.86.) Petitioner opposes the motion to dismiss, arguing that the Michigan Supreme Court did not vacate his sentences for gang-motivated felony and felony-firearm. (ECF No. 9, PageID.2331.) Petitioner suggests that Respondent's argument "does not address the unique facts of the case, i.e., only one of the three sentences originally imposed was vacated and remanded." (*Id.*)

The state court record filed by Respondent indicates that on January 8, 2024, Petitioner's attorney and the Assistant Prosecuting Attorney appeared before the trial court a hearing on Petitioner's motion to enforce the supreme court's order and for a case status conference. (ECF No. 8-12.) At that hearing, Petitioner's counsel argued that Petitioner's case was "no different than any other defendant that does not have a valid sentence." (*Id.*, PageID.1691.) Counsel argued that the MDOC had no jurisdiction or authority to hold Petitioner in its custody. (*Id.*) The trial court rejected counsel's request to relocate Petitioner to the county jail, concluding that Defendant's felony-firearm and gang-motivated felony sentences were still valid. (*Id.*, PageID.1692–1693.)

The state court record also reflects that the trial court held a case status conference on April 22, 2024. (ECF No. 8-13.) The trial court noted that Petitioner's counsel had made a third request to have Petitioner relocated from an MDOC facility in the Upper Peninsula to one closer to the trial court. (*Id.*, PageID.1702.) Counsel represented that he could not proceed without having a forensic and psychiatric evaluation of Petitioner conducted. (*Id.*, PageID.1703.) Counsel argued

4

that going forward without an expert "is pretty clearly ineffective assistance of counsel." (*Id.*) Counsel noted that his intent was to file a motion to withdraw so that Petitioner could request court-appointed counsel "so he can get the benefit of services that he may get through a court-appointed attorney." (*Id.*) As of the date of this opinion, Petitioner has not yet been resentenced pursuant to the Michigan Supreme Court's order.

**II.   Discussion**

As noted *supra*, Respondent contends that Petitioner's habeas petition should be dismissed because the Court lacks jurisdiction. Specifically, Respondent argues that the Court lacks jurisdiction because Petitioner has not yet been resentenced and, therefore, his state judgment has not yet become final. (ECF No. 7, PageID.83.)

In support of that argument, Respondent cites *Davis v. Warren*, No. 18-1768, 2019 WL 3035577 (6th Cir. Feb. 19, 2019). Davis had been convicted of several offenses, including second-degree murder, and was sentenced as a third habitual offender. *See id.*, 2019 WL 3035577, at *1. Davis appealed to the Michigan Court of Appeals, and the court of appeals affirmed his convictions but remanded the matter for resentencing. *Id.* The trial court resentenced Davis, and he again appealed, arguing that counsel provided ineffective assistance at his resentencing hearing. *Id.* The court of appeals rejected Davis's ineffective assistance claim "but nonetheless concluded that reversal of the trial court's amended sentencing judgment was necessary." *Id.* Specifically, the court of appeals reversed the amended sentencing judgment and remanded with instructions for the trial court to enter a judgment reinstating Davis's original sentence. *Id.*

While that second appeal was pending, Davis had filed a § 2254 petition in the United States District Court for the Eastern District of Michigan. *Id.* That court denied the petition on the merits but granted a certificate of appealability with respect to both grounds for relief raised in the petition. *Id.* Davis, therefore, appealed the denial of his § 2254 petition to the Sixth Circuit.

5

On appeal, the Sixth Circuit noted that "[a]lthough neither party nor the district court questioned the district court's subject-matter jurisdiction over this case, we are obligated to raise the issue *sua sponte* when it appears from the record that jurisdiction is lacking." *Id.* at *2. The Sixth Circuit concluded that the Eastern District of Michigan had lacked jurisdiction to consider Davis's § 2254 petition because he had filed it while his second appeal was still pending and before the trial court reimposed sentence; therefore, "his state judgment had not become final, and his habeas petition was therefore not ripe for review." *Id.* The Sixth Circuit noted that even though the jurisdictional defect "may have since been cured" because of the remand for resentencing on July 24, 2018, that did not change the result because "the jurisdiction of the court depends upon the state of things at the time of the action brought." *See id.* (quoting *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004)). The Sixth Circuit, therefore, vacated the district court's judgment and remanded the case with instructions that the district court dismiss Davis's § 2254 petition without prejudice. *Id.*

Here, the procedural posture of Petitioner's proceedings is akin to Davis's proceedings. As set forth above, the Michigan Supreme Court affirmed Petitioner's convictions but vacated the life sentence imposed for Petitioner's first-degree murder conviction. Although the supreme court's ruling left intact Petitioner's sentences for gang-motivated felony and felony-firearm, the determination that Petitioner's life sentence was unconstitutional under the Michigan Constitution essentially vacated Petitioner's entire judgment of sentence. Petitioner is still pending resentencing in the trial court.

The Court recognizes that *Davis* is non-precedential and, therefore, only serves as persuasive, not binding, authority upon this Court. *See Meadows v. City of Walker*, 46 F.4th 416, 424 (6th Cir. 2022). Furthermore, none of the ineffective assistance of counsel claims that

6

Petitioner raises are directed toward his sentences; instead, Petitioner focuses on counsel's alleged ineffectiveness during trial. Nevertheless, the Court recognizes that "piecemeal litigation" is disfavored, and that a state prisoner "is entitled to one fair opportunity to seek federal habeas relief from his conviction." *Banister v. Davis*, 590 U.S. 504, 507, 512 (2020). Dismissing Petitioner's instant § 2254 petition without prejudice would, therefore, allow Petitioner to file an all-inclusive petition that raises the ineffective assistance claims he has asserted, as well as any claims he may wish to raise regarding his re-sentencing once that has become final.

Despite the pendency of his resentencing, Petitioner filed the instant § 2254 petition. Petitioner suggests that when he did so, "he faced a quandary. The limitations period for the habeas petition was set to expire." (ECF No. 9, PageID.2332.) Petitioner argues that if he "did not file and if the habeas court later disagreed that the limitations period began only after [he] was re-sentenced for the first-degree murder conviction, a habeas petition could have been barred on limitations grounds." (*Id.*) As noted above, however, no final judgment of conviction exists in Petitioner's case. Accordingly, the limitations period has not even begun to run, and it will not begin to run until Petitioner's judgment of sentence becomes final after his resentencing.

In light of the foregoing, *Davis* counsels that this Court does not have jurisdiction to consider Petitioner's claims attacking his convictions because his judgment of sentence has not yet become final. Accordingly, the Court will grant Respondent's motion to dismiss (ECF No. 7). Petitioner's § 2254 petition will be dismissed without prejudice.

### III. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a

certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Petitioner's claim under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court resolved Petitioner's § 2254 petition on the procedural ground that the Court lacks jurisdiction. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Both showings must be made to warrant the grant of a certificate. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* The Court finds that reasonable jurists

8

could not debate that *Davis* compels dismissal of the petition for lack of jurisdiction; therefore, the Court denies Petitioner a certificate of appealability.

## **Conclusion**

The Court will enter a judgment dismissing Petitioner's § 2254 petition without prejudice, as well as an order granting Respondent's motion to dismiss (ECF No. 7) and denying a certificate of appealability.

Dated:  October 28, 2024          /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  United States District Judge